In re REXPLORE, INC.
SECURITIES LITIGATION.

MDL No. 698.

United States District Court,
N.D. California.

Oct. 1, 1987.

Richard L. Jaeger and Helen Kang of Feldman, Waldman & Kline, San Francisco, Cal., and Christine Lepera and Dana Singer of Gold, Farrell & Marks, New York City, for plaintiffs.

Sharon Chandler of Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, Cal., Kenneth Stone of Imhoff & Stone, San Diego, Cal., Elizabeth Mullins and Robert Lewin of Stroock & Stroock & Lavan, New York City, and Lorraine B. Moura and James B. Wright of Buchalter, Nemer, Fields, Chrystie & Younger, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

JENSEN, District Judge.

This litigation arises out of the sale of unregistered securities, specifically limited partnership interests in several oil and gas partnerships sold by Rexplore, Inc. Rexplore created approximately 34 oil and gas limited partnerships and served as the general partner of each one. Rexplore subsequently declared bankruptcy.

Before the Court are six actions brought by investors in these limited partnerships. The pretrial proceedings in these actions, as well as in several default actions brought by surety companies, are consolidated in this Court pursuant to an order of the Judicial Panel on multi-district ligitation. The Court designated the Third Amended Complaint ("Complaint") in *Noble v. Levine*, C–86–1448 DLJ, as the lead complaint for purposes of the motions to dismiss currently before the Court. The parties have agreed that the Court's ruling on the claims common to all six actions will bind all the plaintiffs.

### I.

Interests in the limited partnerships were sold pursuant to a private placement Offering Memorandum ("Memorandum"). The Grayson County Oil & Gas Drilling Associates, Ltd. Memorandum, the sole Offering Memorandum at issue in the *Noble* case, was dated July 27, 1984. The investors paid $50,000 for each limited partnership interest, typically by giving $9,500 in cash and executing a promissory note for $40,-500. These promissory notes were then conveyed to Barclays American Business Credit Corp. ("Barclays") as collateral for loans to the partnership. The loans were secured by surety bonds of Forum Insurance Company ("Forum") or Mutual Fire and Marine Insurance Company ("Mutual Fire"). Sentra Securities Corp. ("Sentra") acted as a broker for Rexplore. The Memorandum directed all inquiries to Sentra and Sentra sold plaintiffs their interests. Horne, Nadler & Co. ("Horne"), an accounting firm, prepared financial projections which were attached to the Memoran-

dum. These defendants, along with the individual defendants, Seyer, Rexplore's Chairperson of the Board, and Levine, Rexplore's President, seek dismissal of the 24–count *Noble* complaint.

## II.

### THE FEDERAL SECURITIES CLAIMS

#### A. Section 10(b)/Rule 10b–5

To state a claim under section 10(b)/Rule 10b–5, 15 U.S.C. § 78j(b)/17C.F.R. § 240.-10b–5, plaintiffs must allege that defendants have misrepresented or omitted to state material facts in connection with the purchase or sale of a security, that plaintiffs justifiably relied upon the misrepresentations or omissions, and that the misrepresentations and omissions were made with scienter, that is, an intent to defraud or, in the case of a fiduciary, reckless disregard for the truth. *See, e.g., In Re: Gas Reclamation, Inc. Securities Litigation,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 93,217 at 96,015 (S.D.N.Y.1987).

Plaintiffs allege the following misrepresentations:

1. that the partnership would purchase and/or drill a number of gas wells;

2. that plaintiffs' investment funds and the loans from Barclays would be used to purchase ten producing gas wells;

3. mischaracterization of the validity and enforceability of contracts with gas pipeline companies or carriers, and the price at which the gas could be sold;

4. that plaintiffs would be able to make the promissory note payments out of the cash benefits from their investments to the partnership;

5. mischaracterization of the amount of income to be earned by the partnerships and the investors; and,

6. that the earlier partnerships were successful. Plaintiffs further allege the following omissions:

1. that the assets and funds of the earlier partnerships were commingled and/or misappropriated and plaintiffs' funds would be commingled with those of earlier partnerships;

2. that some of the financing and debt servicing entities were owned by Rexplore principals and that the other financing and debt servicing entites (e.g., Barclays and Forum) had been involved in financing and debt servicing of Rexplore limited partnerships for several years;

3. the underlying assumptions of the written and oral projections, which omission makes these projections misleading;

4. that earlier Rexplore limited partnerships failed to reach their financial projections and promised cash and tax benefits, and otherwise failed to perform in accordance with projections;

5. that defense normally available in an action on the promissory notes would not be available due to the conveyance of the notes to Barclays; and,

6. that in executing the surety bonds the investors waived all defenses usually available in an action by the surety against the investors.[1]

█ Defendants Sentra, Seyer, and Levine argue that absent an allegation that they aided in the preparation of the Memorandum, they cannot be liable for the alleged omissions and misrepresentations. The Complaint alleges that each misrepresentation or omission was made by these defendants. The Complaint, read as a whole, alleges that Sentra, Seyer and Levine made oral misrepresentations, including endorsement of the statements in the Memorandum, when answering plaintiff's inquiries and in pitching sales of limited partnership interests. The Memorandum itself names Sentra as the representative of Rexplore to whom inquiries should be addressed. These allegations put defendants on notice that it is the misrepresenta-

---

**1.** Plaintiffs' section 10(b) claim names as defendants Levine, Seyer, Sentra and Horne. Levine, Seyer and Sentra are specifically named in each allegation of misrepresentation or omission. Horne is specifically named only in those allegations regarding preparation of the projected income of the Grayson partnership and the failure of earlier Rexplore partnerships to meet their projections.

tions and omissions of the Memorandum and of oral discussions with plaintiffs, upon which plaintiffs rely. Plaintiffs' allegations satisfy Fed.R.Civ.P. 9(b) without a specific allegation that these defendants drafted the Memorandum.

■ These defendants also attack the allegations regarding commingling of funds and failure to invest the funds in purchasing and drilling wells on the grounds that they are disguised claims for mismanagement. Plaintiffs have alleged that defendants failed to inform them that commingling occurred in earlier partnerships, and that defendants intended to commingle the funds when they made the offering. Defendants have failed to demonstrate that plaintiffs will be unable to prove that funds were commingled in earlier partnerships, or that defendants intended to commingle the Grayson funds at the time of the offering with those of other partnerships. If proven, these allegations could form the basis for relief under section 10(b)/Rule 10b–5 because such prior conduct and the intent to continue that conduct is material to the investment decision. Thus, plaintiffs have alleged fraud, not merely mismanagement.

■ Defendants further argue that plaintiffs' section 10(b)/Rule 10b–5 claim must fail because the Memorandum is replete with disclaimers and warnings, thus making the investors' reliance on any of the alleged misrepresentations unjustified as a matter of law. According to defendants, the warnings contradict the alleged misrepresentations, and the disclaimer renders meaningless all oral representations. The disclaimer contained in the Memorandum reads, "[n]o person has been authorized to make any representation other than those contained in this memorandum, appendices, or exhibits hereto, and, if made, such representation must not be relied upon."

The Memorandum states that the partnership was formed to purchase 10 producing gas wells, to recomplete six to nine of the producing wells, and to drill four to nine new wells (depending on investor revenue received). It describes the drilling program as "semi-developmental" in that it is not "exploratory," (higher risk) but neither is it "developmental" because "significant variations in the structure of the formation may exist" which can cause the productivity of wells in close proximity to differ significantly. The Geological and Engineering Report incorporated into the Memorandum states that if an agreement is reached with Equitable, the owner of the only pipeline in the region, for transport, the Shrewsbury field (where most of the development was to take place) "is a very attractive area in which to search for shallow gas, because it is a low-risk area with an attractive payout."

The disclaimer of oral representations appears on page (ii) of the Memorandum, in the bold type that is used throughout the six introductory pages of the Memorandum. Also in the introductory section is the statement that the interests "involve a high degree of risk." The section on Risk Factors warns that "[g]as drilling is highly speculative"; that although this program is less speculative than exploratory drilling, the wells drilled may be dry or the soil impenetrable and "there can never be any assurance that any well drilled will be commercially productive"; that the industry is competitive and heavily regulated; and that equipment shortages, poor weather, and bad soil conditions may result in delays. Elsewhere the investors were informed that the driller was an affiliate of the General Partner (Rexplore).

The following qualifications of the expected return-from-investment are interspersed throughout the Memorandum: that there "can be no assurance that the Partnership will be able to economically transport its gas production to market or sell it at a favorable price"; that royalty to landowners must be paid; that the driller receives the entire turnkey price prior to completion of the wells; and that the Partnership "may require funds to develop additional wells," although it further states that "such borrowings may prolong the return of their investment" and that the General Partner's intention "is to take advantage of the Partnership's leases should such leases prove profitable."

In the Subscription Agreement attached to the Memorandum each investor warranted that he/she could "bear the economic risk of losing his entire investment herein"; that he/she is capable of evaluating the risks and merits of his investment; that he/she has been advised of the risks; that he/she has received all pertinent documents; that he/she has had an opportunity to receive answers to questions from the General Partner or its representative; that he/she is informed that the interests "have not been registered under the Securities Act in reliance on an exemption for private offerings"; that he/she is aware that the partnership has no financial or operating history; that the interests are speculative investments; that the tax benefits "are not susceptible to absolute prediction"; and that no guarantee of the profits to be realized were made to him/her.

Incorporated into the Memorandum is a table of Estimated Financial Projects prepared by defendant Horne. A letter was attached thereto which stated that the projections "are based solely upon the assumptions and other financial information furnished by the General Partner"; that the "actual results ... will vary from the projections and the variations may be material," and that Horne does "not express an opinion on the reasonableness of the assumptions" or the probability that actual results may approximate the projected results.

Justifiable reliance is a question of the reasonableness of the investor's behaviour in accepting the truth of defendants' assertions. Thus it is to be evaluated in light of all the elements of the transaction. *See Zobrist v. Coal–X Inc.*, 708 F.2d 1511, 1516–17 (10th Cir.1083). Whether reliance on alleged oral misrepresentations is justified, or whether plaintiffs' reliance constitutes conduct for which they must take responsibility and which bars recovery, depends upon a balancing of numerous factors, none of which is determinative. *Id.* Courts often examine the following characteristics of an investment transaction:

1. the plaintiff's sophistication in financial and securities matters;

2. the duration of personal or business relationships involved;

3. the availability of relevant information;

4. the presence of fiduciary relationships;

5. the concealment of, and the opportunity to discover, fraud;

6. which party initiated, or wished to expedite, the transaction; and,

7. the specificity of the misrepresentations.

*Kennedy v. Josepthal & Co., Inc.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 93,186 at 95,-862 (1st Cir.1987); *Hecox v. R.G. Dickinson & Co.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 93,237 at 96,237 (D.Kan.1987). *Accord, Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516 (10th Cir.1983).

Defendants emphasize that the Rexplore limited partnerships were private placement offerings, in which plaintiffs could participate only due to their financial savvy and well-being. The fact that a private, not a public offering is at issue is accorded great weight, along with the factors of experience of the investors and the existence of disclaimers in the Offering Memorandum, in those cases defendants rely upon to urge that recovery is barred in this action as a matter of law. *See Kennedy v. Josepthal & Co., supra,* and *Hecox V. R.G. Dickinson & Co., supra.* While these cases demonstrate that reliance can be negated by showing that it was not justified in light of the Memorandum, they are distinguishable procedurally. In *Kennedy v. Josepthal & Co., supra,* the Court made the determination that plaintiff's reliance was unjustified in ruling on a summary judgment motion. It applied the seven factors to the facts of the case and noted that plaintiffs were wealthy and experienced. In *Hecox V. R.G. Dickinson & Co., supra,* the Court, after a court trial, found that plaintiff's reliance was unjustified based on its factual findings that plaintiff was an experienced investor with extensive investment experience.

The Court has before it no facts regarding any of the reliance factors other than the fact that the investment was a private offering, nor are plaintiffs required to plead the factors of reliance in great detail. The question of whether or not the disclaimers and qualifications of the Memorandum and Horne's cover letter render reliance on all other statements unjustified, must proceed from a context which recognizes that such disclaimers and qualifications are necessarily intertwined with numerous aspects of the transaction. The answer lies in an examination of the details of those events, which requires a more factually complete record.

Additionally, plaintiffs may be able to prove that the qualifications of the Memorandum are sufficiently misleading to be reasonably subject to the interpretation given in the oral statements. Such a showing weighs in favor of a finding of justifiable reliance, in contrast to cases involving unequivocal contradiction of the Offering Memorandum. Where statements purporting to clarify ambiguities or omissions are at issue, another factor weighing in favor of justifiable reliance is the existence, as in the present case, of an invitation to direct inquiries to the defendants, and the requirement that investors warranty that their questions were answered.

Defendants have failed to establish that plaintiffs will be unable to prove a set of facts demonstrating that their reliance was justified and reasonable. Furthermore, plaintiffs have alleged omissions that are actionable under section 10(b)/Rule 10b–5. In cases involving primarily omissions reliance is presumed upon a showing of materiality. *See Affiliated Ute Citizens v. U.S.,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Materiality is shown by "a substantial likelihood that an investor would consider it important in deciding whether to invest." *See, e.g., TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The alleged omissions of prior commingling, and prior failure of other part-

nerships would be important to an investor.[2]

Accordingly, defendants' Motion to Dismiss is DENIED as to Count One.

**B. Section 12 Claims**

Section 12(1) of the Securities Act of 1933 renders a person or entity liable for selling, without registration, a security that the Act requires be registered. 15 U.S.C. § 77*l* (1). Section 12(2) imposes liability for selling a security by means of a prospectus or oral communication containing an untrue statement of material fact or a material omission of a fact needed to make the statement not misleading. Plaintiffs allege violations of both parts of section 12 against defendants Sentra, Seyer, Levine, Forum, Mutual Fire, and Barclays. The enumerated misrepresentations and omissions of Sentra, Seyer, and Levine, *see supra,* are attributed to the other defendants by means of general allegations of a concerted scheme to defraud.

**1. Status of Defendants as Sellers**

Only sellers of securities are liable for violations of section 12. In the Ninth Circuit the term "seller" for purposes of section 12 includes "participants" whose acts are "both necessary to and a substantial factor in the sale transaction." *Admiralty Fund v. Jones,* 677 F.2d 1289, 1294 (9th Cir.1982). A defendant is a substantial factor in the sale transaction when "the injury to the plaintiff flowed directly and proximately from the actions of the defendant." *Id.* Mere participation is insufficient; conduct indicating culpability is required. *See In Re Fortune Systems Securities Litigation,* 604 F.Supp. 150, 161 (N.D.Cal.1984).

Some courts require actual participation in the selling process, such as soliciting orders, participation in the negotiations, or arranging the sale. *See Hudson v. Captial Management International Inc.,* [1983–1984] Fed.Sec.L.Rep. (CCH) ¶ 99,222

---

**2.** In light of the Court's determination that the alleged misrepresentations survive the motion to dismiss, the Court need not decide whether the omissions alone could support a section 10(b)/Rule 10b–5 claim.

at 98,903–04 (N.D.Cal.1983); *see also In Re Fortune Systems Securities Litigation, supra.* Other courts, applying the same definition of substantial factor as the Ninth Circuit, opine that actual contact between the participant and the investor is not necessary. *In Re Gas Reclamation Securities Litigation, supra,* at 96,020. In *Gas Reclamation* allegations that a lender reviewed and approved a private placement memorandum containing numerous misrepresentations and continued to finance the transactions after being on notice of problems, sufficed to survive a motion to dismiss. *Id.*

While close participation in the actual sales transaction may be necessary to hold a participant in a public offering liable under section 12, *see In Re Fortune Systems Securities Litigation, supra,* 604 F.Supp. at 161, in the present action the sales were pursuant to a private offering. In private placement transactions, the Offering Memorandum plays a key role in the sale of the securities. Participation in the process of determining the content of the Memorandum, depending · upon the circumstances, may constitute a substantial factor in the sale. Allegations that a participant reviewed and approved the private placement memorandum, or drafted sections of it, along with facts showing that the association of the participant with the actual sellers was closer than that expected of a party merely providing routine business services, will survive a motion to dismiss challenging the seller status of the participant. *Accord In Re Gas Reclamation, supra.*

■ The Complaint alleges that Sentra, Seyer and Levine actually sold plaintiffs their securities. It also contains facts tending to show that Sentra alleged answered inquiries of plaintiff investors and that Seyer and Levine participated in compiling the memorandum and in negotiating sales of limited partnership interests. The Court denies the request of these parties to find that they are not sellers within the meaning of section 12 as a matter of law.

■ Plaintiffs also allege a "but for" relationship between Barclays, Forum, and Mutual Fire and the sales transactions, in that Barclays accepted the investors' promissory notes and the sureties approved of the investors as participants in the private offering. Plaintiffs additionally assert that Barclays, and possibly Forum, wrote portions of the offering materials or approved of sections of the Offering Memorandum, but include no such allegation in the Complaint.

The allegations of the Complaint demonstrate only that Barclays, Forum, and Mutual Fire conducted routine, ordinary, business activities in providing services needed by Rexplore to finalize the sales transactions. Approving a borrower, or a principal on a surety agreement, is a routine business activity. Accordingly, the Complaint fails to allege sufficient facts to demonstrate that plaintiffs will be able to prove that Barclays, Forum and Mutual Fire are sellers of securities.

Whether plaintiffs should be granted leave to amend depends upon whether the Complaint alleges sufficient facts of culpability which, when combined with the proffered fact of approving or composing portions of the offering materials, indicates that plaintiffs may be able to prove an adequate level of culpability. Barclays was the sole lender to all the Rexplore limited partnerships and had a pervasive presence in the overall plan of Rexplore-created limited partnerships. However, Forum and Mutual Fire, as is evident from the existence of two surety defendants, did not have an exclusive position. Therefore, while plaintiffs have demonstrated circumstances indicating that if Barclays approved of or composed offering materials it might be a seller, they have not demonstrated circumstances indicating that the actions of Forum and Mutual Fire, if they approved of offering materials, were more than routine business activities. Accordingly, leave to amend is granted only as to the claim against Barclays.

2. Statute of Limitations

Defendants contend that plaintiffs' claims under both parts of section 12 are barred by the statute of limitations. The

Complaint alleges that plaintiffs bought their securities in late 1984. This action was not filed until 1986, over a year and a half after the purchase of the securities.

Section 13 of the 1933 Act sets forth the limitations period for both subsections of section 12. In examining Congress' intent in enacting this section, the statute must be construed as a whole. It provides that no claim under section 12(2) shall be maintained "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. An action brought under section 12(1) shall not be maintained "unless brought within one year after the violations upon which it is based." In conclusion, the statute states that "[i]n no event shall any such action be brought to enfore a liability created under ... [section 12(1)] ... more than three years after the security was bona fide offered to the public, or under [section 12(2)] ... more than three years after the sale." 15 U.S.C. § 77m.

Plaintiffs rely upon the equitable tolling doctrine to avoid the bar of the one year limitations period applicable to both claims. A federal statute of limitations is equitably tolled when the plaintiff remains in ignorance of his cause of action because defendants fraudulently concealed facts material to plaintiff's claim. *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed.2d 743 (1946). To invoke the doctrine plaintiffs must establish "affirmative conduct" by defendants which would, given the circumstances, lead a reasonable person to believe that he did not have a claim for relief. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987). The running of the limitations period recommences when the plaintiffs discover, or reasonably should have discovered, the fraud. *Holmberg v. Armbrecht, supra*, 327 U.S. at 397, 66 S.Ct. at 585. Plaintiffs point to their allegations that Sentra, Seyer, and Levine actively concealed material information from them. They seek to toll the limitations period as to Barclays by allegations that Barclays bore a duty to disclose this concealment, but remained si-

lent. Alternatively they argue that Barclays was a participant in a conspiracy to defraud with the actively culpable defendants and should be responsible for their active concealment.

Usually the equitable tolling doctrine is read into every statute. *Holmberg v. Ambrecht, supra.* However, in this circuit at least the three year outer limitations period for section 12 actions is an absolute limitations period which cannot be avoided by invoking the doctrine. *SEC v. Seabound Corp.*, 677 F.2d 1301, 1308 (9th Cir.1982). Whether the one year limitations period for section 12(1) claims is also absolute has not yet been decided by the Ninth Circuit and is an issue on which no consensus has been reached. *Compare Cook v. Avien*, 573 F.2d 685, 691 (1st Cir.1978) *and Erickson v. Kiddie*, [Current] Fed.Sec.L.Rep. ¶ 92,-889 at 94,311 (N.D.Cal.1986), *with In Re Gas Reclamation Securities Litigation, supra*, [Current] Fed.Sec.L.Rep. at 96,019, *and In Re National Mortgage Equity Corp. Mortgage Pool Certificate Securities Litigation*, 636 F.Supp. 1138 (C.D.Cal. 1986).

 In the opinion of this Court the statutory language compels the conclusion that the equitable tolling doctrine was not intended to apply to section 12(1) claims. The statute specifically provides for accrual upon discovery for section 12(2) claims, but does not include similar language as to section 12(1) claims. A reasonable construction of this language is that Congress intended the one year limitations period of section 12(1) claims to be absolute. Additionally, since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities. On the face of the Complaint, plaintiffs' claim under section 12(1) is time-barred.

 On the other hand, by providing for accrual of a section 12(2) claim upon the discovery of the misrepresentation or omission upon which it is based, section 13 specifically adopts the equitable tolling doctrine for such claims. To successfully in-

voke this doctrine plaintiffs must plead facts demonstrating why, despite the exercise of due diligence, they did not discovery the misrepresentations or omissions sooner. *See Erickson v. Kiddie, supra,* [Current] Fed.Sec.L.Rep. (CCH) at 94,949.[3] In most circumstances only affirmative conduct of concealment by the cupable defendant which would lead a reasonable person to believe he had no claim, tolls the statute. *Id.* However, a passive partner in concealment may be subject to the discovery rule of section 13 where its relationship with the plaintiff imposes a duty to disclose, *id.,* or a conspiracy exists through which the affirmative conduct of fraudulent concealment of one defendant may be attributed to the others. *See In Re Gas Reclamation Securities Litigation, supra,* [Current] Fed.Sec.L.Rep. at 96,019. The facts demonstrating plaintiffs excusable failure to discover the claim must be pled with "at least some particularity." *In Re National Mortgage Equity Corp. Mortgage Pool Securities Litigation,* 636 F.Supp. 1138, 1168 (C.D.Cal.1986).

Plaintiffs do not dispute that they should have been concerned about their securities in February 1985, when the promised quarterly reports and cash benefits were not forthcoming. They assert that their duty to inquire about possible claims terminated when they received assurances from Sentra that the delay was due to a number of variables including bad weather and short-term cash problems. They further argue that they received a series of communications from Sentra that lulled them into thinking that the problems were being solved. Plaintiffs describe this series of communications as letters stating that Sentra would take steps to protect the investors' interests and assurances that Rexplore had acted within the law.

Four of the investors were sufficiently alarmed in early to mid 1985 to refuse to pay their March 1985 payments. In a letter to Mutual Fire dated July 15, 1985 these four investors stated that they had information which raised serious concerns about Rexplore's operation of the partnership, that Rexplore was unable to answer their questions satisfactorily, and that there was a potential for a "Pandora's Box of litigation." Due to their inquiries, Levine paid the March 1985 payments for these four investors.

Plaintiffs' allegations as to Sentra, Seyer, and Levine, those actively involved in the alleged concealment, survive defendants' attack on plaintiffs' due diligence. Due diligence requires plaintiffs to make a reasonable inquiry about their investment and to take affirmative steps to inform themselves of the facts. *See Erickson v. Kiddie, supra,* [1983–1984] Fed.Sec.L.Rep. at 95,960. The information plaintiffs received indicated possible mismanagement of the partnerships, not necessarily fraudulent sale of the securities. Their investigations were thwarted by defendants' assurances that the partnership was suffering from precisely those ailments of which the offering materials warned. These assurances may excuse further investigation for a reasonable period. At this stage of the litigation the Court cannot find that plaintiffs will be unable to establish due diligence. Accordingly, defendants have failed to demonstrate that plaintiffs' section 12(2) claim is time-barred.[4]

For the reasons discussed above, Count Two of the Complaint is DISMISSED in its

---

**3.** In *Erikson v. Kiddie* the court also required that plaintiffs plead facts demonstrating the date they first discovered the untruths or omission forming the basis of their section 12(2) claim. In the opinion of this Court an exact date of discovery need not be pled, although it may need to be proven to prevail on the issue of equitable tolling. *Accord, In Re Gas Reclamation Securities Litigation, supra,* [Current] Fed. Sec.L.Rep. at 96,019. Plaintiffs' have adequately pled the date of discovery by alleging that they discovered the misrepresentations and omissions sometime in early 1986.

**4.** In light of the fact that plaintiffs' section 12(2) claim against Barclays is dismissed with leave to amend on the issue of whether Barclays is a seller, the Court declines to examine in detail plaintiffs' allegations regarding Barclays' responsibility for the fraudulent concealment of defendants. However, the Complaint, in its present form, does not indicate a fiduciary duty on the part of Barclays, and the allegations of conspiracy are extremely vague.

entirety against all named defendants. Count Three is DISMISSED WITH PREJUDICE as to defendants Forum and Mutual Fire, and is DISMISSED WITH LEAVE TO AMEND as to defendant Barclays.

## C. Section 17(a)

Count Four of the Complaint alleges a claim under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Prior to the hearing on the motion to dismiss, the Court had informed the parties that it was of the opinion that a private right of action existed only under section 17(a)(1), the only subsection of the statute requiring scienter. Subsequent to the hearing, the Ninth Circuit, applying the factors of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) for determining whether a private remedy is implicit in a statute, held that no private right of action was created by section 17(a). *In Re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987) (en banc). The Ninth Circuit based its decision on an examination of the legislative history of section 17, concluding that Congress did not intend to preserve a private civil remedy to supplement the express enforcement provisions of the statute.

Accordingly, plaintiffs' claim under section 17 (Count Four) is DISMISSED against all named defendants on the grounds that no private action exists under section 17.

## III.

## RICO CLAIMS

In two counts of the Complaint plaintiffs seeks recovery under the federal civil RICO statutes against Sentra, Seyer and Levine. Count Seven alleges a claim for participation in the conduct of an enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Count Eight alleges a claim for investment of income derived from a pattern of racketeering activity in the RICO enterprise in violation of 18 U.S.C. § 1962(a).[5] Plaintiffs present two theories

under each count: direct liability and liability for participation in a conspiracy in violation of section 1962(d).

## A. Section 1962(c)

Liability under section 1962(c) requires (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Defendants attack each element of plaintiffs' claim.

### 1. Enterprise

An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Thus an enterprise may be a legal entity or an informal ongoing organization whose member associates function as a continuing unit. *See United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). It must exist separate and apart from the pattern of activity in which it engages. *Id.; Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1396 (9th Cir.1986). However, the same proof may be used to establish both the element of an enterprise and the element of a pattern of racketeering activity. *United States v. Turkette, supra*, 452 U.S. at 583, 101 S.Ct. at 2528; *United States v. Bagnariol*, 665 F.2d 877, 890, *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

In their claim under section 1962(c) plaintiffs have alleged alternative enterprises: the Rexplore affiliated partnerships, or an association in fact of defendants Sentra, Rexplore, Seyer, and Levine. The alleged enterprise of an association in fact is inadequate on the face of the Complaint. The only association between the defendants alleged in the Complaint is their association for the purpose of perpetrating the mail, wire and securities fraud, that is the racketeering activity of which plaintiffs complain. Thus the enterprise of this associa-

---

**5.** Counts 23 and 24 allege violations of Colorado RICO statutes modelled on § 1962(c) and (a).

tion in fact is no different from the RICO defendants and has no existence separate from the racketeering activity in which it engages. *See Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984). In contrast, the Complaint, read as a whole, does allege that the Rexplore-affiliated limited partnerships have an existence separate from the RICO defendants. Accordingly, plaintiffs' allegation of the Rexplore-affilated partnership as a RICO enterprise is sufficient to allege an enterprise. The enterprise allegation regarding the association in fact of the defendants shall be stricken.

### 2. Pattern

■ At least two acts of racketeering activity are necessary to allege a pattern, 18 U.S.C. § 1961(5), though two acts may not be sufficient. *Sedima, S.P.R.L. v. Imrex Co., supra,* 105 S.Ct. at 3285 n. 14. Sporadic, isolated acts do not constitute a pattern; the acts must have continuity plus relationship. *Id.* In the Ninth Circuit this requirement is satisfied if the predicate acts pose a threat of continuing activity. *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir.1987). Continuity can exist if the predicate acts are part of a single fraudulent scheme or criminal episode. *Id.*

Plaintiffs allege multiple violations of the federal securities laws and numerous victims. The alleged conduct continued over a period of several months. The predicate acts posed a threat of continuing activity because the participation of several investors was needed to create each separate limited partnership.

Accordingly, plaintiffs have sufficiently pled a pattern to survive a motion to dismiss.

### 3. Racketeering Activity

■ The racketeering activity is described as certain indictable federal offenses, including mail fraud as defined in 18 U.S.C. § 1341, wire fraud as defined in 18 U.S.C. § 1343, and fraud in the sale of securities. 18 U.S.C. § 1961(1). Plaintiffs allege predicate acts of "multiple violations of the antifraud provisions of the federal

securities laws and false and fraudulent representations made by ... defendants to plaintiffs using both the wires and the mails."

In pleading fraudulent acts that form the alleged racketeering activity, plaintiffs need not provide the detail required to indict, but must meet the standard of of Federal Rule of Civil Procedure 9(b). *See Schreiber Distributing v. Serv-Well Furniture Co., supra,* 806 F.2d at 1400. To withstand a motion to dismiss plaintiffs must state the circumstances of the predicate acts with particularity. *See, e.g., In Re National Mortgage Equity Corp. Mortgage Pool Securities Litigation,* 636 F.Supp. 1138 (C.D.Cal.1986). Given that plaintiffs' claim for securities fraud under section 10(b) of the 1934 Securities Act has been sustained by the Court, their predicate acts of securities fraud have been adequately pled.

However, plaintiffs allegations of mail and wire fraud do not contain sufficient notice of the time, place and manner of the alleged fraud to meet the requirements of Rule 9(b). In addition to requiring formation of a scheme to defraud and specific intent to defraud, mail and wire fraud require use or causing a use of the United States mails and wires, respectively, in furtherance of the scheme. *Schreiber Distributing v. Serv-Well Furniture Co., supra,* 806 F.2d at 1400.

The Complaint adequately alleges a scheme to defraud. It states that defendants devised a scheme to defraud plaintiffs by soliciting purchases of the limited partnership interests by means of various misrepresentations. These allegations also suffice to demonstrate a specific intent to defraud. Intention to defraud can be shown by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Sun Savings & Loan Ass'n v. Dierdorff, supra, quoting United States v. Green,* 745 F.2d 1205, 1297 (9th Cir.1984), *cert. denied,* 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). However, plaintiffs have not alleged instances of the use of the United States mails or United States wires

in furtherance of the scheme to defraud. For instance plaintiffs have failed to allege the method by which they received the Offering Memorandum, and have failed to specify whether interstate telephone calls were made and if so, how they are linked to the fraud. Plaintiffs allegations regarding the time, place and manner of the mail and wire fraud are conclusory and fail to put defendants on notice of the precise nature of the claims of mail and wire fraud.

Therefore, Counts Seven and 23 of the Complaint are DISMISSED WITH LEAVE TO AMEND to allege the predicate acts of mail and wire fraud with particularity.

### B. Section 1962(a)

■ Section 1962(a) prohibits the use of income derived from a pattern of racketeering activity in the acquisition, establishment, or operation of any enterprise engaged in interstate racketeering activities. For purposes of this claim plaintiffs define the enterprise as the collective Rexplore-affiliated limited partnerships. Plaintiffs also alleged that Sentra, Rexplore, Seyer, and Levine conspired to use income derived from racketeering activity in the operation of the enterprise in violation of § 1962(d).

■ Violation of subsection 1962(a) occurs by use or investment of the racketeering proceeds in the enterprise. Some courts have limited recovery under this subsection to plaintiffs who have sustained injury specifically as a result of the prohibited investment, reasoning that not necessarily all who have suffered from the predicate racketeering activity have thereby been injured by the investment of the proceeds. *See In Re Gas Reclamation, Inc. Securities Litigation,* [Current] Fed.Sec.L. Rep. ¶ 93,217 at 96,022 (S.D.N.Y.1987). In the opinion of this Court, to recover damages under section 1962(a) plaintiffs must allege facts showing that the use of the racketeering proceeds has caused them

harm. Without demonstrating causation between the forbidden activity and the injury, plaintiffs' claim fails. Plaintiffs have not alleged any facts demonstrating that the source of their damage is the use of the racketeering proceeds. Therefore, Counts Eight and 24 are DISMISSED. Plaintiffs are GRANTED LEAVE TO AMEND to allege the requisite causation, if such facts exist.

### IV.

#### 12 U.S.C. § 86a

■ Title 12 U.S.C. § 86a prohibits charging interest on a commercial loan in excess of $1,000. at a rate more than 5% of the discount rate on ninety-day commercial paper in effect at the Federal Reserve Bank in the relevant district. This section was enacted pursuant to the Depository Institutions Deregulation and Monetary Control Act of 1980 and is applicable only to loans made during the period beginning on April 1, 1980 and ending on April 1, 1983. Deregulation and Monetary Control Act of 1980 § 512. Included in this time period are "loans made on or after [April 1, 1983] pursuant to a commitment to make such loan which was entered on or after April 1, 1980 and prior to [April 1, 1983]." *Id.*

Plaintiffs allege that Barclays related 12 U.S.C. § 86a by charging interest in excess of the statutory limit on the promissory notes of investors to the partnerships.[6] Plaintiffs contend that although the notes were entered into after April 1, 1983 and are therefore outside the relevant time period, evidence that Barclays' commitment to provide loans to certain Rexplore-affiliated partnerships formed before April 1, 1983 is sufficient to constitute a "commitment" as to their loans within the meaning of § 512. According to plaintiffs, since the partnerships were formed pursuant to a

---

**6.** The Complaint alleges the interest rate on the promissory notes is usurious due to the 2% above-prime-rate interest charge on the notes, combined with a 8% distribution fee and a 3.55% management fee to be paid Rexplore by the investors and a 12.1% financing fee to be paid Barclays by the partnership. This theory

points out a flaw in plaintiffs' claim. Rexplore, not Barclays, is the lender on the promissory notes. Barclays is the lender to the limited partnership. Plaintiffs' claim is based upon a combination of the two relationships. There is nothing in the statute to sanction such a combination.

single interrelated and integrated issue of securities, a "commitment" to one is a commitment to all.

To establish a "commitment" prior to April 1, 1983 plaintiffs rely upon a relationship between the general partner and Barclays prior to the time the Grayson partnership existed as a legal entity. In the opinion of the Court, a "commitment," as used in Section 12, means an enforceable agreement to provide a loan. Barclays' pre-April 1, 1983 agreement to provide loans to the Grayson partnership would not be enforceable as to the limited partners, or to the partnership, because the partnership was not in existence. Thus, plaintiffs are unable to establish facts demonstrating a commitment to make the loans that are the subject of the section 86a claim. Accordingly, Count Nine is DISMISSED, WITH PREJUDICE.

## V.

### STATE LAW CLAIMS

As noted above, the allegations of the complaint fail to demonstrate that Barclays was a fiduciary of the investors. Additionally, the allegations of Barclays' participation in a scheme to defraud are inadequate. Accordingly, plaintiffs' claim for breach of fiduciary duty (Count 15) is DISMISSED WITH LEAVE TO AMEND against Barclays.

The Court declines to dismiss the state law claims against Sentra, Levine, Seyer, and Horne, and the remaining state law claims against Barclays. These claims are all within the court's pendent jurisdiction because they share a common nucleus of operative fact with the federal claims alleged against these defendants. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court declines to exercise its discretion to dismiss these claims.

The pendent state claims against Forum and Mutual Fire present a more difficult problem. Despite the dismissal of the federal claims forming the basis for subject matter jurisdiction, a district court may retain jurisdiction over the pendent state claims. *See Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 773–74 (D.C.Cir.1982). When extensive pretrial proceedings have occurred prior to the dismissal of the federal claims, the court's determination of whether to dismiss or to retain the state claims is to be governed by considerations of judicial economy, convenience and fairness. *Id.* On the one hand, since Forum and Mutual Fire are not defendants in the federal claims, much of the proceedings in the multidistrict action will not involve these defendants. On the other hand, due to the extensive pretrial proceedings in this case to date, the Court is familiar with the factual situation that forms the basis of plaintiffs' state law claims against Forum and Mutual Fire. Additionally, dismissing these claims may affect the investors' rights and remedies in the default actions brought by Forum and Mutual Fire that are consolidated as part of this multidistrict litigation. Since similar considerations are at issue in making the determination of whether or not the cases initiated by Forum and Mutual Fire against individual investors should be returned to the transferor courts, the court requests further, limited, briefing on the issues of whether the state law claims against Forum and Mutual Fire should be dismissed, and whether the cases initiated by Forum and Mutual Fire should be returned to the appropriate transferor court.

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Count two is DISMISSED WITH PREJUDICE as to all named defendants;

2. Count three is DISMISSED WITH PREJUDICE as to defendants Forum and Mutual Fire, and is DISMISSED WITH LEAVE TO AMEND, as to defendant Barclays;

3. Count Four is DISMISSED WITH PREJUDICE as to all named defendants;

4. Counts Seven and 23 are DISMISSED WITH LEAVE TO AMEND;

5. Counts Eight and 24 are DISMISSED WITH LEAVE TO AMEND as to all named defendants;

6. Count Nine is DISMISSED WITH PREJUDICE;

7. Count 15 is DISMISSED WITH LEAVE TO AMEND against Barclays;

8. The parties shall appear before the Court on October 9, 1987 at 2 o'clock p.m. for a status conference and to show cause why the state law claims against Forum and Mutual Fire should not be dismissed and why the following actions should not be returned to the transferor court.

1. C–87–0680 DLJ
*Mutual Fire & Marine Ins. Co. v. Essig;*
2. C–87–0669 DLJ
*Mutual Fire & Marine Ins. Co. v. Berenger;*
3. C–86–6743 DLJ
*Forum Ins. Co. v. Morton;*
4. C–86–6742 DLJ
*Forum Ins. Co. v. Reilly;*
5. C–86–6741 DLJ
*Forum Ins. Co. v. Slovick;*
6. C–86–6740 DLJ
*Forum Ins. Co. v. Seyer;*
7. C–86–6739 DLJ
*Forum Ins. Co. v. Christenson;*
8. C–86–6647 DLJ
*Forum Ins. Co. v. Wanderman;*
9. C–86–6646 DLJ
*Forum Ins. Co. v. Brown;*
10. C–86–6645 DLJ
*Forum Ins. Co. v. Nelson;*
11. C–86–6644 DLJ
*Forum Ins. Co. v. Schmelzer;*
12. C–86–6643 DLJ
*Forum Ins. Co. v. Bonomo;*
13. C–86–6642 DLJ
*Forum Ins. Co. v. Levine.*

Briefing on this issue is to be filed no later than five o'clock p.m. October 7, 1987. Plaintiffs are permitted to file a brief of no more than ten pages. Forum and Mutual Fire are each permitted to file a brief of no more than five pages.